# MISSOURI-KANSAS-TEXAS RAILROAD COMPANY OF TEXAS ET AL. v. JULIUS PLUTO.

No. 7659. Decided November 5, 1941.
Rehearing overruled December 3, 1941.
(156 S. W., 2d Series, 265.)

*Charles C. Huff*, of Dallas, *W. W. Naman*, and *Naman, Howell & Boswell*, all of Waco, for plaintiffs in error.

The Court of Civil Appeals having found that there was no evidence of fraud or mistake and the former judgment being unambiguous, constituted a bar to recovery, and the evidence having been fully developed and adduced upon the trial, the cause should not have been remanded but judgment should have been rendered for the railway company and its receiver. Fidelity & Deposit Co. v. Reed, 108 S. W. (2d) 939; Williams v. Safety Casualty Co., 129 Texas 184, 102 S. W. (2d) 178; Stewart v. Houston & T. C. Ry. Co., 62 Texas 246.

*Allan & McDonald* and *J. D. Williamson*, all of Waco, for defendant in error.

Where a bill of review has been filed to vacate and set aside a former judgment upon allegations of mutual mistake, parol evidence is admissible to prove the intent and purpose of the

parties at the time of the entry of such agreed decree, although same contradicts the judgment sought to be corrected, and where the minor is represented in the apportionment of monies by a next friend having an adverse interest, and the minor is awarded an inadequate compensation, the judgment will be set aside. Gulf, C. & S. F. Ry. Co. v. Lemons, 152 S. W. 1189; City of Dallas v. Crawford, 222 S. W. 305; Greathouse v. Fort Worth & D. C. Ry. Co., 65 S. W. (2d) 762.

*Vinson, Elkins, Weems & Francis,* of Houston, and *Touchstone, Wight, Gormley & Touchstone,* of Dallas, filed briefs as amici curiae.

MR. JUDGE SLATTON delivered the opinion of the Commission of Appeals, Section B.

The 19th district court of McLennan County rendered judgment on a special issue verdict against Missouri-Kansas-Texas Railroad Company of Texas in the sum of $10,000, which judgment was reversed and the cause remanded by the Honorable Court of Civil Appeals at Waco. 130 S. W. (2d) 1048. The parties prosecuted writs of error to this court. Both writs were granted.

Julius Pluto was injured in an accident on the 19th day of April, 1916, as a result of a collision between an automobile driven by his father and a train operated by the railroad company. The mother and baby sister of Julius were killed. The father and other brothers and sisters of Julius were injured as a result of the collision. Counsel was employed by the father of Julius. The claim agent of the railroad company negotiated the settlement with the father and the two agreed upon a lump sum settlement on the 23rd day of June, 1916. Suit was filed in the 19th district court on the 24th day of June, 1916. Judgment was entered on the same day and provided for a recovery on behalf of George D. Pluto for himself and as next friend for his minor children, naming them, in the sum of $12,000. It was adjudged that counsel for Pluto be paid out of said sum $2,400.00. The remaining $9,600.00 was apportioned by the court, $5,100.00 to George D. Pluto and $750.00 each to the six minor children.

The present suit was filed in 1933 before Julius Pluto became of age, by next friend. Julius reached his majority before trial and continued the suit in his own behalf. His theories

of recovery were cast in two counts. The first count was upon the theory that the judgment entered on June 24, 1916, was ambiguous and did not adjudicate the claim of Julius Pluto for personal injuries received by him in the collision. The second count was upon the theory that the judgment of 1916 should be set aside because the rights of Julius Pluto, a minor, were not protected, in that the trial court was not advised of the serious and permanent nature of the personal injuries suffered by the minor, Julius Pluto; that if counsel representing the Plutos had known of such injuries the settlement would not have been consummated; that the agent negotiating the settlement for the railroad company knew of the seriousness and permanency of the presonal injuries suffered by the minor Julius; that Julius was awarded nothing for his personal injuries; that his father as next friend, in virtue of his adverse interest in the suit to that of Julius, could not properly represent the minor's interest in the entry of the agreed judgment; that the court was not advised in the premises of the serious and permanent injuries suffered by Julius Pluto and thereby could not properly adjudicate his rights, and the entry of such judgment was fraudulent as to said minor. The company pleaded the consent judgment as res adjudicata and the usual defense in tort actions.

The father of Julius Pluto testified to facts (contrary to the contract of settlement and the agreed judgment) to the effect that said contract and judgment were not intended by the parties to compensate Julius for personal injuries sustained by him, but "was a compromise for the loss of my wife and baby." He further testified that "in the court proceedings in relation to the entering of judgment in said suit there was no evidence offered that the minor Julius Pluto had sustained injuries of a personal and permanent nature and no injuries were disucssed in the presence of the court or the judge who approved the settlement." Counsel who represented the father for himself and as next friend testified that at the time of entering into the contract and rendition of the consent decree he did not know that Julius was suffering serious and permanent personal injuries and that no evidence of such injuries was submitted to the court when the compromise judgment was rendered. He further tertified that the father advised him as to the injuries sustained by the children in the collision. The evidence shows that the agent representing the railroad company visited the father of Julius while he and his children were in the hospital shortly after the accident and continued

to visit him each day for about a month. The pleadings on behalf of the Plutos which were filed in the suit in which the compromise was approved were prepared by counsel representing the railroad company as a convenience to counsel representing the Plutos. Evidence is in the record to the effect that Julius Pluto suffered serious and permanent injuries as a result of the collision and was suffering such injuries during the time of the negotiations of the settlement and at the time the court approved the same and has continuously suffered serious and permanent injuries since the accident. The record shows without dispute that the father, while acting as next friend, was interested in the settlement agreement adversely to his children. It is also shown without dispute that some of the minor children (brothers and sisters of Julius) were not injured in the collision and in the judgment were awarded the same amount as was Julius, i. e., $750.00.

The jury found in part as follows: That it was not the intention of the parties to the settlement agreement to compensate Julius Pluto for personal injuries sustained by him; that the injuries of Julius Pluto were not fully disclosed to the court at the time of the rendition of the judgment, and that the failure to disclose to the court the injuries sustained by Julius was the result of negligence on the part of George D. Pluto; that the agent representing the railroad company at the time of the rendition of the judgment knew or had reasonable cause to know the true physical condition and the injuries of the minor Julius Pluto; that the judgment rendered on the 24th day of June, 1916, was against the interests of the minor Julius Pluto; that the operators of the train were guilty of negligence and awarded damages for personal injuries in the sum of $10,000.00.

■ The Honorable Court of Civil Appeals held that evidence aliunde the record was not admissible to either vary or contradict or explain the terms of the judgment, and that the evidence did not raise the issue of * * * mistake or * * * fraud which were included in special issues numbers 18, 19, 20 and 21. The law applicable to the facts of this case, which are shown without dispute and found by the jury, is stated in the case of Greathouse v. Ft. Worth & Denver City Ry. Co., 65 S. W. (2d) 762, (loc. cit. 765):

"If, therefore, it be shown that the minor's case was not properly laid before the court, by collusion, neglect, or mis-

take, a new bill may be brought in behalf of the infant, and if it be established that the judgment was against the interests of the minor, and the facts which made it so were not disclosed to the court, and the court was therefore induced to approve the agreement for judgment, the minor may, as between the parties to the judgment, have the same set aside by a bill of review. Day v. Johnson, 32 Tex. Civ. App. 107, 72 S. W. 426; Schneider v. Sellers, 25 Tex. Civ. App. 226, 61 S. W. 541; Cannon v. Hemphill, 7 Tex. 184. And where the interests of the minor and those of the next friend conflict, the next friend is not a competent person to represent the minor. Lumsden v. Chicago, R. I. & T. Ry. Co., 23 Tex. Civ. App. 137, 56 S. W. 605; City of Dallas v. Crawford (Tex. Civ. App.) 222 S. W. 305; 31 C. J. 1136."

In Freeman on Judgments, 5th Ed., Vol. 3, p. 2770, Sec. 1347, the rule is thus stated:

"It is a general rule that where a judgment is rendered for the plaintiff in an action by an infant through his next friend to recover damages for personal injuries, and there is no judicial investigation as to the merits of the claim but the proceedings are merely formal for the purpose of carrying out a settlement or compromise of the action made without the consent of the court, even though the court acquiesces in the rendition of the judgment, it will not be permitted to stand as a bar to a hearing in behalf of the infant on the merits of his claim."

See 15 A. L. R., 667; 20 A. L. R. 1249.

■ This is a direct attack upon the judgment rendered on the 24th day of June, 1916, as appears from our summary of the trial pleadings stated above. In such a case the rule stated in 25 Tex. Jur., Sec. 243, p. 669, is supported by the decisions cited. In the case of Weir v. W. T. Carter & Bro., 169 S. W. 1113, (writ of error refused; loc. cit. 1116) it is said:

"Whenever, as a result of mutual mistake or fraud, a written instrument fails to express the agreement of the parties, parol evidence is admissible to show what the agreement was. If this was not the rule, the reformation or correction of a written instrument could rarely, if ever, be accomplished. This proposition is too elementary to require the citation of authorities."

In the case of Cook v. Burnley, 45 Texas 97, (loc. cit. 115) Mr. Chief Justice Roberts, speaking for this court, said:

"If it appears *prima facie* that a question has been adjudicated, it may be proved by parol testimony that such question was not in fact decided by the former suit."

Under these authorities, in a case like the present, it is our opinion that parol evidence was admissible to show the real settlement agreement and to show that the minor's case was not properly presented to the court in which the settlement agreement was approved. The representatives of the railroad company had notice of the adverse interests of the next friend, George D. Pluto. They were charged by law with knowledge that if the minor's case "was not properly laid before the court by collusion, neglect, or mistake, a new bill may be brought in behalf of the infant." They were further charged with knowledge that "if it be established that the agreed judgment was against the interests of the minor, and the facts which made it so were not disclosed to the court, * * * the minor may, as between the parties to the judgment, have the same set aside by a bill of review." The agent of the railroad company who negotiated the settlement with the next friend and the counsel employed by next friend and who visited George D. Pluto at the hospital, as above stated, was in the court room at the time of the trial of the present suit. He was not called by the railroad company to deny that it was not the intention of the parties to the settlement agreement to compensate Julius Pluto only for the loss of his mother. Neither did the railroad company offer any evidence that the minor's case was properly laid before the trial court when the consent decree was rendered. The company relied upon the recitation in the consent decree that evidence was introduced.

■ It can make little difference whether the approval by the court of the agreed judgment was brought about by collusion, neglect, or mistake of the next friend or through the next friend and the railroad company, for the reason that all parties interested in the transaction well knew that:

"The bringing of a suit by next friend for a minor in no way changes his status; his disabilities are not removed or suspended by bringing such suit (Galveston, H. & S. A. R. Co. v. Washington, 25 Tex. Civ. App. 600, 63 S. W. 538, 540), and his interests must, in good faith, be fully protected; he is non

sui juris and altogether under the court's protection." Greathouse case, supra, (loc. cit. 765).

The railroad company knew that in the pleadings of the Plutos (prepared by the railroad's counsel) it was charged that Julius sustained personal injuries. Still, according to evidence offered by Julius in the present suit, no proof was adduced upon that subject at the time of the entry of the consent decree. How then, can it be said that the railroad company did not participate in that abortive attempt to adjudicate the minor's rights? The railroad company, being a party to the proceedings, should not be allowed to preclude the minor by the consent decree, because as a party to that proceeding it well knew (according to the evidence in the present suit) that the minor's case was not properly laid before the tribunal where the power existed to give judicial assent to the settlement agreement between the next friend of the minor and the company.

■ It is contended by the railroad company that the judgment sought to be set aside is indivisible and therefore the failure of Julius Pluto to make all parties to the judgment parties to this action is fatal to the present suit. The judgment sought to be set aside by Julius Pluto apportioned to him the sum of $750.00 which, according to his allegations and proof, was only compensation to him for the loss of his mother. The judgment, according to the railroad company, compensated him for both personal injuries and the loss of his mother. Therefore, the only concern of Julius in this suit is to avoid the binding force of the first judgment in so far as it precludes his recovery for serious and permanent injuries suffered by him. He does not seek to relitigate his statutory right of recovery for the wrongful death of his mother. The rule applicable to the present case is well stated in 25 Tex. Jur., Sec. 182, p. 581:

"Although at common law a judgment is considered as an entirety and must be vacated as a whole, in Texas, as we have elsewhere explained, a judgment may be void in part and stand as to the remainder where the valid portion is not so dependent on the invalid as to fall with it. It follows that in a proper case a court may set aside that part of a judgment which is void or erroneous and allow the remainder to stand."

The rule is stated in 34 C. J. p. 376, Sec. 585, as follows:

"A court having power to vacate a judgment entirely may grant less relief by vacating it in part only, where justice so requires. Where one portion of the judgment is separable from the balance thereof, and the objection goes only to a separable part, the court should not set aside the whole judgment but only the objectionable part. * * * A judgment against several persons may be set aside as to one or more of them, and allowed to stand as to the others, except where a judgment is entire and indivisible."

See Boone v. Hulsey, opinion on rehearing, 71 Texas 176, 9 S. W. 531; Davis v. Walker, 233 S. W. 521.

■ It is contended by the railroad company that the failure of Julius Pluto to tender the $750.00 awarded to him in a consent decree is fatal to his right to recover in this action. It must be kept in mind that Julius Pluto does not attempt to relitigate his cause of action for the wrongful death of his mother, for which he was paid the sum of $750.00. He only seeks in this action to avoid the binding force of that judgment so as not to preclude him in the assertion of his cause of action for personal injuries sustained by him. In addition to this, it is asserted by Julius Pluto that in a case such as this that unless it be shown that he had the $750.00 on hand or that the same had been spent for necessaries, he is not required to return the consideration received under the consent decree. His contention in that regard is sound. See Williams, Guardian, v. Sapieha, 94 Texas 430, 61 S. W. 115; Bullock v. Sprowls, 93 Texas 188, 54 S. W. 661.

■ It is contended by the railroad company that the Missouri-Kansas-Texas Railroad Company of Texas (successor railroad company) is not liable to Julius Pluto for damages sustained by collision of a train of the Missouri-Kansas & Texas Railway Company of Texas, while operated by C. E. Schaff as receiver, because such obligation has not been assumed by the successor railroad company. Foreclosure proceedings were instituted in the United States District Court in the Northern District of Texas to foreclose certain liens on the properties and franchises of the Missouri-Kansas & Texas Railway Company of Texas and C. E. Schaff was the receiver appointed in said proceedings. The railroad was being operated by C. E. Schaff as receiver at the time the injuries were sustained by Julius Pluto. A final decree of foreclosure was entered under which a master was appointed to sell the railroad property. It was provided in the decree of foreclosure that the purchasers at

such foreclosure sale should assume all obligations and subsisting liabilities for personal injuries, etc., occurring or caused in the operation of the railroad company by C. E. Schaff, receiver. The purchasers from the master joined with others in the execution of the articles of incorporation of the Missouri-Kansas-Texas Railroad Company of Texas. In the deed to the properties and franchises said company expressly assumed all subsisting obligations of C. E. Schaff, receiver. The purchase and sale of the properties were in conformity with Articles 6421 and 6422 of the Revised Civil Statutes of 1925. The contention of the railroad company that it is not liable to Julius Pluto has been settled adversely to its contention by the following authorities: International-Great Northern R. Co. v. Oehler, 262 S. W. 785; Missouri K. & T. Ry. Co. of Texas v. Gray, 160 S. W. 434; M. K. & T. Ry Co. v. Wells, 275 S. W. 218; International-Great Northern R. Co. v. Swayne, 1 S. W. (2d) 609.

We have examined all assignments of error presented in the Court of Civil Appeals and in this court to ascertain whether the judgment rendered by the Court of Civil Appeals could be sustained upon any other theory. We have concluded that no assignment presented by the railroad company can properly be sustained. It follows, therefore, that the judgment of the Court of Civil Appeals which reversed the judgment of the trial court must be reversed and the judgment of the district court must be affirmed.

Opinion adopted by the Supreme Court November 5, 1941.

Rehearing overruled December 3, 1941.