STEWART, COX AND HATCHER, P.C. and Turner and Associates, P.A., Appellants,

v.

FORD MOTOR COMPANY, et al., Appellees.

No. 09–10–00371–CV.

Court of Appeals of Texas, Beaumont.

Submitted May 12, 2011.

Decided Aug. 25, 2011.

Martin J. Siegel, Law Offices of Martin J. Siegel, P.C., Houston, Jerry M. White, Turner & Associates, Fort Worth, for appellants/cross-appellees.

Craig A. Morgan, Michael W. Eady, Danielle M. Harsany, Thompson, Coe, Cousins & Irons, L.L.P., Austin, John Milutin, The Milutin Law Firm, Houston, for appellee/cross-appellant.

John Milutin, for I.F.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

I.F., a minor, was ejected from a minivan during a one-car rollover accident and was injured. I.F.'s father, Oscar Flores, was killed in the rollover, and I.F.'s sister and brother, along with the other occupants of the minivan, were injured. In June 2001, Librado Flores, individually and as the representative of the estate of Oscar Flores, as well as other individuals injured in the accident, filed a suit in Orange County, Texas, seeking to recover damages against Bridgestone/Firestone North American Tire, LLC (Firestone),

Ford Motor Company, and Arrow Ford, Inc.

In 2003, Firestone settled with the group of plaintiffs. A district judge in Orange County (the regular judge) signed an order approving the settlement, which included I.F.'s claims against Firestone. During the hearing on Firestone's settlement, the regular judge learned that the proposed settlement awarded I.F.'s attorneys a fee of forty percent of the gross proceeds from the settlement.[1] I.F.'s mother, who instituted the suit on I.F.'s behalf as her next friend, and the attorneys for the plaintiffs, advised the regular judge that the terms of Firestone's settlement proposal were fair. After finding that no conflict existed between I.F.'s next friend and I.F., the regular judge approved Firestone's proposed settlement, and in its order approving the settlement, found the agreement to be "in the best interests of the minor plaintiffs[.]"[2]

In 2010, Ford reached an agreement to settle with the group of plaintiffs that had previously settled with Firestone. The parties presented Ford's settlement for approval to a Montgomery County district judge, the pretrial judge who had been assigned in September 2001 to coordinate the pretrial proceedings in connection with the rollover.[3] At the conclusion of the Ford settlement hearing, the pretrial judge advised the parties that he would approve the Firestone settlement, "save and except for the changes that I'm going to be ordering with respect to this case."[4] The pretrial judge, after considering the attorneys' fees and expenses that had been incurred in connection with both the Ford and Firestone settlements, approved a fee that altered the fee previously approved by the regular judge in Orange County, reducing the fees and expenses that had been approved and paid following the Firestone settlement in 2003. The pretrial judge signed an order approving the Ford settlement which recites that the regular judge, in approving the Firestone settlement, awarded attorneys fees and expenses that the pretrial judge "deems to be an amount of attorneys fees and expenses that should be adjusted in the best interest of the minor." The pretrial judge then found it "appropriate to adjust the amounts payable under the Ford settlement to effect an adjustment of $227,403.25 of attorneys fees and expenses[,]" even though those fees and expenses had been approved as being rea-

1. The contingent fee agreement that I.F.'s mother signed obligates the "Client" to pay forty-five percent of the gross recovery or judgment.

2. When the Firestone settlement occurred, four of the parties to the suit, including I.F., were minors.

3. The presiding administrative judge had assigned the trial judge in Montgomery County to be the "pretrial judge" under Rule 11 of the Texas Rules of Judicial Administration. Tex.R. Jud. Admin. 11, *reprinted* in Tex. Gov't Code Ann. tit. 2, subtitle F app. (West 2005). Consistent with Rule 11.3(b) of the Texas Rules of Judicial Administration, the administrative order of assignment states: "[T]he assigned pretrial judge will preside over all pretrial proceedings in the case in the place of the regular judge. The pretrial judge will decide all pretrial motions, including motion[s] to transfer venue and motions for summary judgment. The pretrial judge and the regular judge must consult on setting a trial date." *See* Tex.R. Jud. Admin. 11.3(b). In this case, the "regular judge" was the judge of the 128th District Court in Orange County, Texas.

4. The attorneys representing I.F.'s interests at the settlement hearings and I.F.'s guardian ad litem take opposite positions about whether the pretrial judge was authorized to re-approve Firestone's portion of the settlement, as the agreement with Firestone had previously received the approval from the regular judge in whose court the case was filed.

sonable in 2003 by the regular judge. Subsequently, the pretrial judge ordered Ford to interplead $227,403.25 into the registry of the court, pending the resolution of all "further proceedings[.]" Ford and the attorneys representing I.F.'s interests in the settlement hearings then perfected their respective appeals.

One of the questions to be determined in this appeal is whether the pretrial judge who acted to approve Ford's settlement abused his discretion by revisiting and changing the decision of the regular judge concerning the award of attorneys' fees and expenses from the proceeds of the Firestone settlement. In addition to the challenge presented to the order approving settlement by Stewart, Cox and Hatcher, P.C., and Turner and Associates, P.A., who served as I.F.'s attorneys in both settlements, Ford challenges the pretrial judge's decisions to appoint a guardian ad litem in connection with the pretrial court's consideration of Ford's settlement proposal, to tax the entire guardian ad litem's fee against Ford, and to include in the award of a reasonable guardian ad litem fee the guardian ad litem's time for tasks that Ford contends were not related to forming a recommendation regarding the reasonableness of Ford's proposed settlement with I.F.

Altering the Regular Judge's Approval of the Firestone Settlement

First, we note that there are some limited circumstances under which a court is allowed to revisit the propriety of whether the terms of another court-approved settlement involving a minor were reasonable. In *Missouri–Kansas–Texas R.R. Co. of Texas, et al. v. Pluto,* the Texas Supreme Court allowed a settlement that had received a court's approval of a minor's claim to be set aside where "the minor's case was not properly laid before the court, by collusion, neglect, or mistake[.]" 138 Tex. 1, 156 S.W.2d 265, 267 (1941) (citing *Day v. Johnson,* 32 Tex.Civ.App. 107, 72 S.W. 426, 428 (Tex.Civ.App.Dallas 1903, writ dism'd w.o.j.)). In *Pluto,* a district court approved the railroad's settlement of the claims of several family members that arose from a train's collision with a car. *Id.* at 266. Seventeen years later, one of the minors, whose claims had been settled, filed a suit seeking to avoid the effect of the court-approved settlement of his claim. *Id.* Following a jury trial on the disputed issues, a jury found in part that the minor's injuries had not been fully disclosed to the court during the hearing conducted to approve the minor's settlement, that the minor's next friend had negligently failed to disclose the minor's injuries to the court during the hearing to approve the settlement, that the railroad's agent knew or had reasonable cause to know the extent of the minor's injuries at the time the proposed settlement was approved, and that the judgment entered on the settlement was against the interest of the minor. *Id.* at 267. Under these circumstances, the *Pluto* Court allowed the minor to avoid the effect of the court-approved settlement and allowed the minor to recover a judgment compensating him for his personal injuries which had resulted from the collision. *Id.* at 266, 270.

In this case, however, none of the parties claimed that when this matter was pending before the pretrial judge that I.F.'s injuries or the fees and expenses which were sought by I.F.'s attorneys were not properly laid before the regular judge when that court acted to approve Firestone's proposed settlement in 2003. Additionally, in the pleadings before the pretrial judge, no party asked that the pretrial judge disregard any of the terms of the Firestone settlement in considering Ford's proposal to settle. I.F.'s guardian ad litem, appointed by the pretrial judge in

connection with Ford's proposed settlement, never filed pleadings alleging that the Firestone settlement had been procured by collusion, neglect or mistake. We do note that the guardian ad litem's pleadings suggested that I.F.'s attorneys, by scheduling the Firestone settlement hearing with the regular judge, had violated the administrative order assigning the pretrial judge to handle pretrial matters.

During the hearing on the Ford settlement, the pretrial judge re-approved the Firestone settlement, subject to exceptions referencing the attorney fees and expenses awarded in the Firestone settlement. However, the pretrial judge did not find that the terms of Firestone's settlement with I.F. were not properly presented to the regular judge at the time the regular judge approved Firestone's proposed settlement.

From the hearing the pretrial judge conducted on Ford's proposed settlement and the order approving the Ford settlement, it appears the pretrial judge believed that the Firestone settlement required his approval. On appeal, the attorneys who procured the Ford and Firestone settlements argue that the regular judge could approve the Firestone settlement because the approval of a minor's settlement is not a " 'pretrial proceeding' " or the determination of a " 'pretrial motion' " as contemplated by Rule 11.3 of the Texas Rules of Judicial Administration. *See* Tex.R. Jud. Admin. 11.3(1), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. F app. (West 2005).

▆ In resolving whether the pretrial judge erred by revising the Firestone settlement, we must first decide whether the regular judge had subject matter jurisdiction at the time he approved Firestone's proposed settlement. District courts are courts of general jurisdiction, and the Texas Constitution provides that the jurisdiction of a district court "consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." Tex. Const art. V, § 8. By statute, "[t]he district court has the jurisdiction provided by Article V, Section 8, of the Texas Constitution." Tex. Gov't Code Ann. § 24.007 (West 2004). "Thus, all claims are presumed to fall within the jurisdiction of the district court unless the Legislature or Congress has provided that they must be heard elsewhere." *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex.2000).

I.F.'s next friend, by filing suit on I.F.'s behalf in a district court in Orange County, gave the trial court jurisdiction over her person. *See Gracia v. RC Cola–7–Up Bottling Co.*, 667 S.W.2d 517, 519 (Tex.1984) ("In a suit by a 'next friend,' the real party plaintiff is the child and not the next friend."). By filing suit in district court, I.F. gave the district court of Orange County subject-matter jurisdiction to adjudicate her claims for her own personal injuries and for the wrongful death of her father. *See* Tex. Const. art. V, § 8 (constitutional grant of jurisdiction to district courts); Tex. Gov't Code Ann. §§ 24.007, .008 (West 2004) (statutory grant of jurisdiction to district courts). Moreover, Texas law provides a trial judge who possesses jurisdiction the power, in the absence of an objection, to conduct "any of the judicial proceedings[,]" and to "hear and determine a matter pending in [the] district[.]" Tex. Gov't Code Ann. § 74.094(a), (e) (West 2005).

▆ While Rule 11.3 of the Rules of Judicial Administration contemplates the pretrial judge will preside over all pretrial proceedings "in place of the regular

judge[,]" we decline to place a construction on Rule 11 that makes the Rule operate in a way to divest the regular judge of subject matter jurisdiction over a case in which the regular judge is given the constitutional and statutory authority to act. *See* Tex. Const art. V, § 8; Tex. Gov't Code Ann. § 24.007; *Kazi,* 12 S.W.3d at 76 (noting that the focus of modern policy is to " 'reduce the vulnerability of final judgments to attack on the ground that the tribunal lacked subject matter jurisdiction[,]' " and holding that the trial court "had jurisdiction because a claim for wrongful death was within its constitutional jurisdiction"). In light of the Legislature's decision to cloak district courts with jurisdiction over pending cases, we conclude that the regular judge, in the absence of an objection, acted on a case over which he had subject matter jurisdiction to act in approving Firestone's proposed settlement. Consequently, the regular judge's 2003 order approving the Firestone settlement is not void.

▌ Absent judicially created exceptions such as fraud, Rule 44 of the Texas Rules of Civil Procedure makes court-approved settlements "forever binding and conclusive upon the party plaintiff in such suit." Tex.R. Civ. P. 44(2); *see Pluto,* 156 S.W.2d at 267. In this case, the pretrial judge refused to honor all of the terms of the 2003 court-approved settlement. In doing so, the pretrial judge did not find that the Firestone settlement had not been properly laid before the regular judge because of collusion, neglect, or mistake. *See Pluto,* 156 S.W.2d at 267. Nor did the pretrial judge find that I.F.'s attorneys had breached their fiduciary duties to I.F. in their handling of the Firestone settlement. *See Burrow v. Arce,* 997 S.W.2d 229, 245 (Tex.1999) (adopting section 49 of the proposed Restatement (Third) of The Law Governing Lawyers with respect to claims seeking the forfeiture of an attorney's fee).

▌ Here, there are no pleadings from which the pretrial judge could have implied findings on the types of claims that would have authorized a finder of fact to avoid the binding effect of a court-approved settlement. Absent pleadings notifying the parties who were interested in the Firestone settlement that claims to avoid the binding effect of that settlement were being made, or unless the claims in avoidance are determined to have been tried by consent, courts are not authorized to ignore the finality of another court's approval of a settlement. *See* Tex.R. Civ. P. 67 (Amendments to Conform to Issues Tried Without Objection); *Cunningham v. Parkdale Bank,* 660 S.W.2d 810, 813 (Tex. 1983) ("Further, a judgment must be supported by the pleadings and, if not so supported, it is erroneous."); *Stoner v. Thompson,* 578 S.W.2d 679, 683–84 (Tex. 1979) (holding that absent a pleading by the intervenor requesting an award of money damages, the plaintiff did not receive fair notice that the trial court might award damages in favor of the intervenor upon the trial); *In re Park Mem'l Condo. Ass'n, Inc.,* 322 S.W.3d 447, 450–51 (Tex. App.-Houston [14th Dist.] 2010, no pet.) ("A trial court cannot grant relief to a party in the absence of pleadings supporting that relief, unless the issue has been tried by consent."). In the matter before us, none of the parties' pleadings seek the recovery of an award of money damages against I.F.'s attorneys. Additionally, the guardian ad litem did not argue that the evidence adduced during the Ford settlement hearing supported an award of damages against I.F.'s attorneys, nor do we find any argument that the Firestone settlement was not properly presented to the regular judge before the regular judge approved it. The record before us does

not support the conclusion that the attorneys who procured the Firestone settlement tried the theories of collusion, mistake, neglect, or breach of fiduciary duty by consent.

We hold the pretrial judge abused his discretion when he failed to honor all of the terms of the Firestone settlement. Given the finality accorded to court-approved settlements, and in the absence of pleadings of avoidance as well as sufficient evidence to prove a ground to avoid the effect of the court-approved settlement, the pretrial judge was required to honor the regular judge's approval of the Firestone settlement. *See* Tex.R. Civ. P. 44. We sustain appellants' issues one and three. We reverse and render the judgment the trial court should have rendered by deleting provisions of the judgment whose effect is to disgorge fees and expenses awarded and approved by the regular judge in the Firestone settlement. Because issues two and four would not result in any additional relief, we do not address these issues. *See* Tex.R.App. P. 47.1.

### Ford's Cross–Appeal

By cross-appeal, Ford challenges the pretrial judge's orders appointing a guardian ad litem and authorizing payment of the guardian ad litem at its expense. Ford argues that the pretrial judge abused its discretion in appointing a guardian ad litem, in failing to subsequently remove the guardian ad litem at Ford's request, in awarding an ad litem fee that included compensation for time spent on matters allegedly unrelated to the scope of the ad

litem's appointment, and in taxing Ford with the entire amount of the guardian ad litem fee. In response, I.F.'s attorneys argue Ford waived any claim that her attorneys should bear, in whole or in part, the guardian ad litem's fee. Additionally, I.F.'s attorneys argue that the pretrial judge did not abuse its discretion in taxing the fees of the guardian ad litem to Ford. The guardian ad litem also responded to Ford's cross-appeal, arguing that the only argument Ford preserved is its claim that the pretrial judge should not have included eighty-seven hours of the ad litem's time in calculating the guardian ad litem's fee. The guardian ad litem also argues the pretrial judge did not abuse his discretion in appointing a guardian ad litem, in calculating the amount of the guardian ad litem's award, or in taxing the entire ad litem fee against Ford.

First, we consider whether Ford preserved its arguments for our review. The record reflects that during the second week of November 2009, the parties filed a joint motion requesting the pretrial judge to approve Ford's proposed settlement. The joint motion advised the pretrial judge that I.F. was a minor who was being represented by her mother as her next friend,[5] and that they did not request the appointment of a guardian ad litem because the next friend "is not believed to have interests which are adverse to those of her minor daughter." The parties also advised the pretrial judge that the adult plaintiffs[6] had reached agreements to settle for confidential amounts. The day after the joint motion was filed, the pretrial

---

5. The joint motion advised the pretrial judge that I.F.'s mother was not an occupant of the vehicle when the rollover occurred, she had divorced I.F.'s father before the rollover occurred, and she "is not believed to have had, and has not ever pursued, individual causes of action arising out of the rollover[.]"

6. Based on the joint motion, it appears that the adult parties who had reached a settlement in 2009 with Ford were Elania Flores, individually and as representative of the estate of Oscar Flores, Surica Flores, Alejandro Flores, Rosemary Del Angel, Amanda Cano, Ricky Cano, and Mike Reyes.

judge appointed an attorney to act as I.F.'s guardian ad litem. Two weeks later, I.F.'s next friend filed an agreed motion, asking the pretrial judge to reconsider its appointment of a guardian ad litem because there was no "conflict between [the next friend's] own interests and those of her minor daughter." The agreed motion to reconsider also represents that Ford had agreed to the motion. In early January 2010, the pretrial judge denied the agreed motion to reconsider, stating that "it appears to the Court that the next friend has an interest adverse to the minor[.]"

By joining the next friend's motion to reconsider, Ford notified the court of its claim that a guardian ad litem was unnecessary. Additionally, in nonjury cases, complaints regarding the legal and the factual sufficiency of the evidence to support the amount awarded by the trial court "may be made for the first time on appeal in the complaining party's brief." Tex. R.App. P. 33.1(d).

■ By joining in the next friend's motion, by complaining during the hearing about the amount of the guardian ad litem's proposed fee, and by challenging the sufficiency of the evidence to support the pretrial judge's award when it filed its appellate brief, Ford preserved its complaints that it should not be taxed with a guardian ad litem fee and that the fee the pretrial judge taxed solely against it is unsupported by the evidence. *See id.; Garcia v. Martinez,* 988 S.W.2d 219, 221 (Tex.1999) (concluding that defendant's objection to the amount of the guardian ad litem's fee preserved complaint regarding how the trial court had reasoned in assessing that fee); *Dover Elevator Co. v. Servellon,* 876 S.W.2d 166, 172 (Tex.App.-Dallas 1993, no pet.) (holding that no waiver occurred where the defendant made the trial

court aware it contested the assessment of the guardian ad litem fees against it).

■ Having concluded that Ford's issues were preserved, we will first address Ford's argument that the pretrial judge abused its discretion by appointing a guardian ad litem to assist it in evaluating the fairness of Ford's proposed settlement. Rule 173.2 of the Texas Rules of Civil Procedure requires the trial court to appoint a guardian ad litem for a minor when the minor's guardian or next friend appears to the court to have an interest adverse to the minor, or where the parties agree. *See* Tex.R. Civ. P. 173.2(a); *see also* Tex.R. Civ. P. 44(2). Several areas of potential conflict were identified by I.F.'s guardian ad litem when he responded to the motion to reconsider his appointment. Because any adverse interest by the next friend would allow the pretrial judge to appoint a guardian ad litem, we need not address each of the potential conflicts addressed in the guardian ad litem's response. *See* Tex.R. Civ. P. 173.2(a)(1) (requiring appointment if the next friend appears to the court to have "an interest adverse" to the minor).

■ During the settlement hearing, it became apparent that some of the settlement proceeds under Ford's proposed settlement were to be used to pay liens for medical expenses that had arisen from the minor's care. Generally, a child's parents are legally obligated to pay their child's medical expenses. *See* Tex. Fam.Code Ann. § 151.001(a)(3) (West 2008) (providing that among a parent's duties is the duty to provide the child with medical care); *see also Sax v. Votteler,* 648 S.W.2d 661, 666 (Tex.1983) (explaining that historically, in Texas, the right to recover for medical expenses incurred in behalf of a minor belongs to the minor's parents). Although I.F.'s next friend had not filed suit in her individual capacity, she acknowl-

edged that, as I.F.'s mother, she understood that she was obligated to pay for I.F.'s medical care.

Recognizing that its settlement extinguished the mother's obligation to pay medical expenses that had been incurred in caring for I.F., Ford's reply to the guardian ad litem's brief recognizes that the guardian ad litem "may, indeed, be entitled to some modest fee for the time he necessarily spent to determine whether there was a conflict of interest between [the next friend] and [I.F.] in the plaintiffs' recent settlement with Ford in 2009." We conclude that the next friend's conflict of interest justified the pretrial judge's decision to appoint a guardian ad litem to review the proposal and to advise the court about whether it should approve Ford's proposed settlement. *See* Tex.R. Civ. P. 173.2(a)(1). Issues one and two of Ford's cross-appeal are overruled.

In issues three and four, Ford complains the pretrial judge abused its discretion by awarding the guardian ad litem compensation for time spent on matters that Ford contends were unrelated to the next friend's conflict of interest, and in taxing all of the guardian ad litem's fees and expenses to Ford. With respect to the guardian ad litem's work, the record includes the guardian ad litem's "Application for Compensation of Guardian Ad Litem." The guardian ad litem's itemized time record reflects that he spent 126.6 hours in connection with his appointment between October 21, 2009, and May 21, 2010, and that he incurred out of pocket expenses of $354.40.[7] While neither the guardian ad litem's written application nor his itemization suggest an hourly rate to apply to his itemization, the guardian ad litem testified

during the hearing that $350 per hour would be "normal," while also stating that he would be willing to accept "whatever the [ ] Court feels is reasonable." In July 2010, without specifying the hourly rate utilized in calculating the guardian ad litem's award, the pretrial judge ordered Ford to pay a fee of $40,000 "for the fees and expenses related to his work" as guardian ad litem. After the pretrial judge signed the order, none of the parties requested the trial court to make findings of fact or conclusions of law.

■ Trial courts are authorized to tax as costs a guardian ad litem fee based on a reasonable hourly rate for necessary services performed during the appointment to protect the child's interest. *See* Tex.R. Civ. P. 173.6(a), (c); *Brownsville—Valley Reg'l Med. Ctr., Inc. v. Gamez*, 894 S.W.2d 753, 756 (Tex.1995). "The amount of compensation awarded to the ad litem lies within the sound discretion of the trial court[,]" and will not be overturned "absent evidence showing a clear abuse of discretion." *Gamez*, 894 S.W.2d at 756.

Ford does not claim that the guardian ad litem did not accurately report the time he spent working as I.F.'s guardian ad litem; instead, Ford contends that it should not be taxed with charges that are beyond the scope of the guardian ad litem's role. Ford focuses largely on 87 hours of time spent by the guardian ad litem (1) defending a challenge by the next friend to the pretrial judge's appointment of a guardian ad litem, (2) analyzing I.F.'s 2003 Firestone settlement, and (3) revising the settlement trust created from the settlement proceeds allocated to I.F. in the

---

7. The guardian ad litem's itemization also includes a request to approve $4,500 in additional fees charged by another law firm hired to restructure I.F.'s settlement trust. Ford has not complained of the pretrial judge's order taxing Ford with that firm's fees; consequently, we do not further address the trial court's award of $4,500 to that firm.

Firestone settlement.[8]

 The majority of the time itemization that Ford challenges involves time the guardian ad litem spent to oppose a motion to appoint a guardian ad litem—a motion that Ford joined. Rule 173.4 of the Texas Rules of Civil Procedure defines the role of the guardian ad litem, and requires the guardian ad litem to participate "in any proceeding before the court whose purpose is to determine whether a party's next friend or guardian has an interest adverse to the party[.]" Tex.R. Civ. P. 173.4(d)(2). Rule 173.6, which addresses the guardian ad litem's compensation, provides that the guardian ad litem "may be reimbursed for reasonable and necessary expenses incurred and may be paid a reasonable hourly fee for necessary services performed." Tex.R. Civ. P. 173.6(a). The guardian ad litem's participation in court proceedings, which includes the challenge by mandamus to determine whether a conflict existed, are within the scope of the guardian ad litem's necessary services for which the Rules of Civil Procedure allow the guardian ad litem to be compensated. *See* Tex.R. Civ. P. 173.4(d)(2), 173.6(a). We conclude that the pretrial judge was authorized to tax as costs the time the guardian ad litem expended in defending his appointment.

Ford also argues that the time the guardian ad litem spent to restructure the trust from the Firestone settlement was outside the scope of the guardian ad litem's appointment. Although Ford notes its difficulty in quantifying the amount of time the guardian ad litem spent revising the trust, it does not appear that the guardian ad litem created the legal documents that restructured the trust or that he filed the motion asking the court to restructure I.F.'s trust. Based on Ford's citations to the record, it appears that Ford objects to approximately seven hours the guardian ad litem spent in connection with the restructuring of I.F.'s trust.

In determining the reasonableness of a request by a guardian ad litem for a fee, the Texas Supreme Court has indicated that trial courts may consider factors such as:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

8. The next friend filed a writ of mandamus challenging the pretrial judge's appointment. In connection with that proceeding, Ford advised this Court that the appointment was " 'neither appropriate nor permitted[,]' " but then advised that it did " 'not really care' " how the dispute between I.F. and I.F.'s attorneys was resolved concerning the size of the contingent fee to be paid, " '[b]ut it would be unfair to saddle [Ford] with the expense of paying any fees the guardian ad litem might incur to resolve that dispute.' " *In re Richardson*, No. 09–10–00032–CV, 2010 WL 877558, at *3 (Tex.App.-Beaumont Mar. 11, 2010, orig. proceeding) (mem. op.).

*Land Rover,* 210 S.W.3d at 607 (quoting *Garcia,* 988 S.W.2d at 222)).

■ In this case, the guardian ad litem was a lawyer who had served as an ad litem on other cases involving Ford and Firestone matters, had thirty-three years of legal experience, and held certifications in personal injury and civil trial law. "A reasonable hourly rate multiplied by the number of hours spent performing necessary services within the guardian ad litem's role yields a reasonable fee." *Id.* at 608. Had the pretrial judge awarded the guardian ad litem for all of the time reflected by his itemization at a rate of $350 per hour, the award would have equaled $44,664.[9] However, the pretrial judge awarded a total of $40,000 for fees and expenses. Because the award did not include all of the guardian ad litem's time, Ford has failed to demonstrate on this record that the pretrial judge awarded the guardian ad litem a fee for the time spent in connection with the restructuring of I.F.'s settlement trust.

■ However, even if the award includes approximately seven hours of time relating to the restructuring of I.F.'s trust, we are not persuaded that the inclusion of those hours would constitute an abuse of discretion. In this case, Ford did not create a separate trust to administer the funds it paid to settle I.F.'s claims; instead, the parties, including Ford, chose to utilize and restructure I.F.'s existing trust.

The guardian ad litem's role is to determine and advise the court whether the settlement is in the party's best interest. *See* Tex.R. Civ. P. 173.4(c). In order to advise the pretrial judge whether utilizing and amending I.F.'s existing trust would be in her best interest, the pretrial judge could have reasonably approved the time the guardian ad litem spent in reviewing and analyzing all of the trust documents, as that activity falls within the guardian ad litem's role. *See id.*

Next, we address whether the pretrial judge was allowed to assess the entire guardian ad litem fee against Ford. The Texas Rules of Civil Procedure provide a trial court with flexibility in taxing costs. Rule 173.6 allows the court to tax the guardian ad litem's compensation as a cost of court. Tex.R. Civ. P. 173.6(c). Rule 131 allows the trial court to tax costs to the successful party's adversary. Tex.R. Civ. P. 131. Rule 141 allows a court, for good cause, which is to be stated on the record, to adjudge costs "otherwise than as provided by law or these rules." Tex.R. Civ. P. 141.

■ With respect to taxing the guardian ad litem's fee against Ford, the pretrial judge, by virtue of I.F.'s achieving a significant settlement payment from Ford, could have considered I.F. as having been the prevailing party. In *Land Rover U.K., Ltd. v. Hinojosa,* 210 S.W.3d 604 (Tex. 2006), the Texas Supreme Court considered whether the trial court abused its discretion in taxing a settling defendant with a guardian ad litem fee of $100,000. *Land Rover,* 210 S.W.3d at 606. While the Supreme Court held that the fee award exceeded the amount supported by the evidence, it remanded the award to allow the trial court to reconsider the amount of the fee the trial court had taxed to a settling party; in other words, the Texas Supreme Court did not hold that the trial court could not assess an ad litem fee against the settling defendant. *Id.* at 609; *cf. Garcia,* 988 S.W.2d at 222–23 (remanding fee that exceeded the amount supported by the evidence to allow the trial court to render a judgment awarding guardian ad litem a reasonable fee); *cf.*

9. $350 × 126.6 hours + out of pocket expenses of $354.

*Gamez,* 894 S.W.2d at 757 (reducing trial court's award of guardian ad litem fee and rendering judgment for guardian ad litem's fee against settling defendants). Because the pretrial judge could reasonably have considered I.F. to have been the prevailing party, we hold the Texas Rules of Procedure authorized the pretrial judge to tax Ford with a reasonable guardian ad litem fee. Issues three and four of Ford's cross-appeal are overruled.

### Conclusion

After carefully reviewing the record, and having considered the parties' briefs, we conclude the pretrial judge abused his discretion by disregarding the regular judge's order approving the Firestone settlement and by adjusting the regular judge's approval of the attorney fees and expenses paid to I.F.'s attorneys from the Firestone settlement. We sustain appellants' issues one and three, and we reverse and render the judgment the trial court should have rendered, as follows: First, we delete the last paragraph beginning on page four of the order approving settlement; second, we amend the first full paragraph on page five by deleting the second sentence and substituting in its place the following: "The Firestone settlement shall be distributed by Ford as follows:"; third, we also delete the fifth full paragraph on page five of the order approving settlement, and we delete the first full paragraph on page six, and in its place insert the following language: "$288,486.63 [10] to Turner and Associates for payment of attorneys' fees and reimbursement of expenses; and $147,573.20 to [I.F.'s] Trust." Finally, we delete the phrase "as adjusted by this Order" from the last paragraph that begins on page seven of the order approving settlement. With these corrections, the remainder of the language of the pretrial judge's order approving settlement is, except as modified by this opinion, in all things affirmed.

To carry out the mandate of this Court in connection with Master File No. 01–01–410, and Cause No. A010292C, upon their filing of a joint motion with the pretrial judge, we direct the pretrial judge to allow Stewart, Cox and Hatcher, P.C. and Turner and Associates, P.A. to withdraw the funds that they interpleaded into the court's registry, together with the interest on such funds, when our mandate becomes final. We overrule all other issues.

AFFIRMED IN PART; REVERSED AND RENDERED IN PART.

DAVID GAULTNEY, Justice, dissenting.

I respectfully dissent. Rule 11 of the Texas Rules of Judicial Administration grants the authority to "decide all pretrial motions" to the pretrial judge, not the "regular" judge. Tex.R. Jud. Adm. 11.3(b). The pretrial judge presides "over all pretrial proceedings in the case in place of the regular judge." *Id.* A pretrial request that a judge approve a settlement with a minor is a pretrial motion. The settlement with Firestone should have been submitted to the pretrial judge for approval. *See* Tex.R. Jud. Adm. 11, 11.7(a) ("This rule is to be construed and applied so as to facilitate the implementation of Rule 13 to the greatest extent possible."); *compare* Tex.R. Jud. Adm. 13.6(b). The pretrial motion sought a disposition by means other than a conventional trial on the merits.

---

**10.** There is a seventeen cent clerical error in the order approving settlement, and as the discrepancy in the calculation is insignificant, we have decided to include that sum in the revised amount that is to be credited to I.F.'s settlement trust in the revised judgment.

The claims against Firestone were not severed from the claims against Ford. The "regular" judge's order in the minor's settlement with Firestone remained interlocutory, and his error in deciding the issue was subject to review and correction by the pretrial judge. Essentially, when the pretrial judge considered whether to approve the attorney fees for the minor's total recovery in the case, the pretrial judge was not bound by the prior determination by the "regular" judge. The pretrial judge acts "in place of" the "regular" judge.

Finally, in my view the pretrial judge should not have assessed the entirety of the ad litem fees against Ford. When the attorneys joined issue over the amount of the attorney fees and filed a petition in intervention, the attorneys became the losing parties to the proceeding on that issue, not Ford. *See* Tex.R. Civ. P. 131, 141, 173.6(c). *Compare* Tex. Civ. Prac. & Rem. Code Ann. § 7.011 (West 2002). In my view, the attorneys should have greater responsibility for the ad litem fees under these circumstances than Ford, even under this Court's judgment on the attorney fee issue.